$400

JS

In The United States District Court
For the Eastern District of Pennsylvania

| Brandi Booker, Administrator, Estate of Elaine Booker<br>Plaintiff, | 15    5070 |
|---|---|
| v. | Civil Action No. 13-CV-01099 |
| United States of America<br>Defendant | |

**FILED**

SEP 09 2015

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

## COMPLAINT

### JURISDICTION

1. This action arises under the Federal Tort Claims Act, 28 U.S.C. sections 1346(b). 2671-80, as hereinafter more fully applies.

2. Jurisdiction is conferred upon this court by 28 U.S.C. section 1346(b) and further confirmed by the order of Judge Juan R. Sanchez dated 3/31/14 ruling that the United States of America is the appropriate defendant in this matter.

3. Pursuant to 28 U.S.C. section 2675(a) and the "savings provision" of 28 U.S.C. section 2679(d)(5) permitting the timely filing of a claim once this case was removed from state court to district court, the claim set forth herein was presented to the Department of Health and Human Services on May 26, 2015.

4. The Department of Health and Human Services denied the claim on August 4, 2015.

### VENUE

5. Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. section 1402(b)

### PARTIES

6. Plaintiff's decedent, Elaine Booker was a citizen of the United States and resided at 5009 Brown Street, Philadelphia, Pennsylvania. Plaintiff, Brandi Booker is a citizen of the United States and resides at 5009 Brown Street, Philadelphia, Pennsylvania.



7. The employees of the government were employed at a facility located at 432 N. 6th Street, Philadelphia, Pennsylvania.

## FACTS

8. The facts as stated in the complaint filed in Pennsylvania state court under the caption <u>Booker v. GPHA etal Philadelphia Court of Common Pleas, April Term 2011, No.02611</u> are incorporated as if fully stated herein.

9. Plaintiff, Brandi Booker is an adult and resident of the Commonwealth of Pennsylvania, residing at 5009 Brown Street, Philadelphia, Pennsylvania 19139. Brandi Booker is the daughter of decedent, Elaine Booker and the administrator of the Estate of Elaine Booker.

10. Defendant's facility, Greater Philadelphia Health Action is a Pennsylvania corporation with its principal place of business at 432 N. 6th Street, Philadelphia Pennsylvania and organized under the existing laws of the Commonwealth of Pennsylvania for the purpose of providing healthcare services and operates several healthcare facilities in Philadelphia. Plaintiff is asserting a professional liability claim against Greater Philadelphia Health Action.

11. Defendant's employee, Dr. Heather Ruddock is a duly licensed and practicing physician specializing in acute chronic disease management for babies, children and teens and at all times relevant hereto was on the medical staff of Greater Philadelphia Health Action as an employee of servant, agent or ostensible agent of defendant. Plaintiff is asserting a professional liability claim against Dr. Heather Ruddock.

12. Defendant, Dr. Monica Mallory-Whitmore is a duly licensed practicing physician specializing in family medicine and at all times relevant hereto was on the medical staff of Greater Philadelphia Health Action and an employee, servant, agent or ostensible agent of defendant. Plaintiff is asserting a professional liability claim against Dr. Mallory-Whitmore.

13. At all times relevant hereto the physicians, nurses, nurse practitioners, technicians and other health care providers who provided treatment to plaintiff's decedent, Elaine Booker were the employees, servants, agents and/or ostensible agents of defendant.

14. Elaine Booker (Ms. Booker) was employed as an administrative assistant/ customer service representative at Greater Philadelphia Health Action principally working at their Woodland Avenue Health Center location from approximately 2001 until her death in April 2009.

15. On or about December 2008 plaintiff was administered a Tuberculin PPD test by her employer Greater Philadelphia Health Action.

16. Ms. Booker was informed by Dr. Heather Ruddock that the PPD test came back positive and confirmed that Ms. Booker had been exposed to the bacterium that causes tuberculosis.

17. Dr. Heather Ruddock advised plaintiff that she was required to take the medication isonazoid

as a condition of her continued employment.

18. Dr. Heather Ruddock did not conduct a physical examination of plaintiff.

19. Dr. Heather Ruddock did not conduct a medical interview of plaintiff for the purpose of establishing the appropriateness of the drug isonazoid for plaintiff.

20. Dr. Heather Ruddock's duties included supervising Dr. Monica Mallory-Whitmore

21. Dr. Heather Ruddock informed Dr. Monica Mallory-Whitmore of the results of plaintiff's PPD test and instructed Dr. Monica Mallory-Whitmore to prescribe the drug isonazoid for Ms. Booker.

22. Dr. Heather Ruddock did not request that Dr. Monica Mallory-Whitmore physically examine Ms. Booker prior to prescribing the drug isonazoid.

23. Dr. Monica Mallory-Whitmore prescribed the drug isonazoid for plaintiff and instructed Ms. Booker to ingest it for 3-6 months.

24. Dr. Monica Mallory-Whitmore did not physically examine plaintiff for the purpose of establishing the appropriateness of prescribing the drug isonazoid.

25. Dr. Monica Mallory-Whitmore did not conduct a medical interview or evaluation of Ms. Booker for the purpose establishing the appropriateness of prescribing the drug isonazoid.

26. Ms. Booker continued to take the medication for a period of approximately 4 months. During this time period she also continued to work at Greater Philadelphia Health Action.

27. Ms. Booker began to feel ill and on or about 4/16/2009 went to visit her primary physician, Luigi A. Cianci, MD, a non-party to this action.

28. Dr. Cianci noted the yellowish color of her eyes is his notes.

29. Dr. Cianci ordered blood tests for plaintiff.

30. Dr. Cianci examined the isonazoid medication that had been prescribed by Dr. Mallory-Whitmore and advised that plaintiff immediately go to the hospital emergency room.

31. Ms. Booker was admitted into Mercy Fitzgerald Hospital through its Emergency Room on or about 4/16/2009. Mercy Fitzgerald Hospital is a non-party to this action.

32. Ms. Booker's chief complaints at the time of admission per the medical records of Mercy Fitzgerald Hospital were fatigue, rectal bleeding and jaundice, vomiting and loss of appetite. History of Present illness indicates that yellowish discoloration of her eyes started in the past week and gradual yellowish discoloration of urine . "Patient also had an episode of bright red

bleeding per rectum, the night before admission. The patient was apparently found to be positive for PPD and was started on isoniazid approximately a month ago. After which started having these symptoms and also had associated vomiting, feeling tired, fatigue, loss of appetite."

32. Physical examination revealed that her vital signs: blood pressure 101/48, heart rate 89, respirations 24, temperature 98.2, pulse 98% on room air. "Generally she appeared awake, comfortable, appeared icteric. The conjunctivae appear yellow, pupils equal, reactive to light and accommodation . Intact extraocular movements. Neck: supple, no JVD, no cervical nodes. Chest: normal vesicular breath sounds. Cardiovascular: Regular first and second heart sound. Abdomen: Soft, nontender. Liver slightly enlarged. Rectal: Trace heme-positive. Extremities: No clubbing, cyanosis or edema. Neurologic: No focal cranial motor or sensory deficits."

33. Ms. Booker's recent labs on admission to Mercy Fitzgerald Hospital, white count: 13.6, hemoglobin, 13, platelets 278, prothrombin time 20.9, TNR 1.7, sodium 141, potassium 4.9, creatinine 1.2, albumin 3.2, bilirubin 29.5, alkaline phosphatase 307, ALT 2052, AST 2635. Plaintiff admitted to Mercy Fitzgerald Hospital for possible drug-induced hepatitis along with consideration for viral hepatitis according to her discharge summary.

34. The hospital course of the discharge summary states Ms. Booker "became hypertensive and coagulopathic with elevated INR of 2.8 and worsening serum bilirubin. She was thereafter transferred to the intensive care unit. While in the intensive care unit plaintiff received "supportive management" of her condition.

35. While at Mercy Fitzgerald Hospital intensive care Hospital Course Ms. Booker "was again maintained on supportive management including IV fluids with dextrose and bicarbonate, lactulose, Zofran, Nexium, and Ivanz were started. Ultrasound of the abdomen was done which showed mild irregularity of hepactic contour and heterogeneity with possible parenchymal liver disease. A CT scan of the abdomen was done which showed findings, which were consistent with colitis with moderate ascites."

36. Mercy Fitzgerald Hospital Hospital Course Discharge summary concludes "In view of the worsening liver function tests with worsening PT and INR, as per GI and ID recommendation, the patient was transferred to Jefferson Liver Unit for further evaluation and treatment.

37. On or about 4/20/09 plaintiff was transferred from Mercy Fitzgerald Hospital to Thomas Jefferson Liver Unit (Thomas Jefferson), a non-party in this action, for further evaluation and treatment including evaluation as a candidate for a liver transplant.

38. Upon admission to Thomas Jefferson, plaintiff complained of abdominal pain. A Physical examination and Review of Systems found her positive for abdominal pain, diarrhea, dysuria and jaundice. Temperature 96.2, pulse 94, respirations17, pulse ox 100% on room air, blood pressure 90/62, in general she was under no acute distress and was jaundiced. HEAD and FACE: Normocephalic/atraumatic EYES: Pupils equal, round and reactive to light, positive scheral icteris, ENT. Moist mucus membranes. CARDIOVASCULAR. Regular rate and rhythms. No murmurs, gallops or rubs. RESPIRATION. Clear to auscultation bilaterally. No

wheezes, rhonchi or crackles. ABDOMEN. Soft, nontender, nondistended, positive bowel sounds. EXTREMITIES. No clubbing, cyanosis or endema. SKIN. Jaundiced. NEUROLOGIC. Nonfocal. Cranial nerve II-XII intact.

39. On or about 4/21/2009 at 9:52 A.M, plaintiff experienced renal failure and was placed on dialysis.

40. Ms. Booker's principal diagnosis was Acute Necrosis of the Liver. Her secondary diagnoses included acute renal failure, gluococorticoid deficiency, hepatorenal syndrome, acidosio, food/vomit pneumonitis, acute respiratory failure, severe sepsis, septic shock, defibriation syndrome, urinary tract infection.

41. Ms. Booker received several procedures at Thomas Jefferson including a venous catheter NEC, an arterial catherization, serum transfusion, continuous invasive mechanical ventilator, endometrachael tube, vein catheter for renal dialysis, pharyngoscopy and packed cell transfusion.

42. Ms. Booker's respiration continued to rapidly deteriorate even after a non-breathing mask was paced on her and adjusted to the highest setting according to medicine progress note dated 4/23/09 "patient placed on breathing mask. had multiple issues overnight. wheezes. "

43. Later, the same day at 9:15AM on 4/23/09 hepatology progress notes " progressive liver failure" and the need for intubation. An endotracheal tube was inserted on 4/23/09 and Ms. Booker was placed on a mechanical ventilator the same day.

44. The attending physician in his progress note of 4/24/09 notes that plaintiff "remains critically ill." She is sedated and on the mechanical ventilator.

45. From 4/24/2009 to 4/25/2009 Ms.Booker's status worsened until her " blood pressures were only in the 70's systolic"

46. Thomas Jefferson staff had a discussion with plaintiff's family and informed them that she "would likely die overnight." Ms. Booker's family requested that she be removed from the ventilator and her status changed to Do Not Resuscitate /Do Not Intubate . Ms. Booker was placed on a morphine drip and pronounced dead at 4:26 AM on 4/25/09 with family present at her bedside.

47. Ms. Booker's final diagnosis on her discharge summary was fulminant hepatic necrosis. In the discharge summary Paul E. Marik, M.D., a non-party to this action, and her attending physician noted in the History of Illness section that Ms. Booker developed hepatitis as a result of INH toxicity. The autopsy listed the cause of death as Hepatic failure.

48. On 4/22/11, plaintiff Brandi Booker, as the administrator of the Estate of her deceased mother, Elaine Booker, and in her own right, commenced the instant action.

49. At all times relevant, plaintiff was under the care and supervision of the defendant its agents and employees. At all times relevant, the actions and/or omissions of the defendant's facility and its employees toward Ms. Booker were below the applicable standards of care, resulting in serious, severe, and permanent injuries to Ms. Booker which include but were not limited to increased risk of death from improper and incorrect treatments for INH toxicity and liver injury, loss of chances of cure and survival, fatigue, depression, loss of enjoyment of life, and ultimately, death.

50. Brandi Booker, brings this action under the provisions of the Pennsylvania Wrongful Death Act, 42 Pa. C.S.A. Sections 8301 et seq. as the Administrator of the Estate of Elaine Booker and under the Survival Act, 42 Pa C.S.A. Sections 8302, et seq for the benefit of the beneficiaries of the Estate of Elaine Booker.

## COUNT I
## WRONGFUL DEATH

### BRANDI BOOKER v. GREATER PHILADELPHIA HEALTH ACTION, INC

### NEGLIGENT SUPERVISION AND MONITORING OF HEALTH CARE PROVIDERS

51. Plaintiff avers and incorporates by reference all of the allegations of the preceding paragraphs herein as if fully set forth.

52. Defendant's agent, Greater Philadelphia Health Action, at all times relevant, held itself out as a medical center capable of adequately supervising and monitoring the actions and/or omissions of all who practice within its walls to ensure the treatment of all patients and employees who are patients, including plaintiff's decedent, Elaine Booker.

Greater Philadelphia Health Action acted negligently in the treatment of Ms. Booker including:

    a. Failure to properly and adequately supervise, monitor and train its employees, servants, agents, and/or ostensible agent, defendant Dr. Monica Mallory-Whitmore, by failing to ensure that Dr. Mallory-Whitmore correctly and properly examined and interviewed Ms. Booker prior to prescribing medication, by failing to ensure that Dr. Mallory-Whitmore correctly and properly treated Ms. Booker, and failing to ensure that Dr. Mallory-Whitmore and Dr. Heather Ruddock correctly and properly supervised and monitored Ms. Booker's treatment after prescribing medication for Ms. Booker and advising Ms. Booker take the medication for a period of 3-6 months.

    b. Failure to establish and enforce adequate protocol, rules and regulations for its employees, servants, agents, and/or ostensible agents, such as Dr. Mallory-Whitmore and Dr. Heather Ruddock, that treat and counsel employees that have tested positive after receiving a tuberculin/ PPD test.

c. Failure to ensure that its employees, servants, agents and/or ostensible agents such as, Dr. Mallory-Whitmore and Dr. Ruddock, refer its employees that have tested positive after receiving a tuberculin/PPD test to an appropriate infectious disease specialist for appropriate evaluation and proper treatment that would have prevented Ms. Booker's untimely death.

d. Failing to ensure that its employees such as Dr. Mallory-Whitmore and Dr. Ruddock appropriate document interactions with employees and patients.

53. By reason of, and as a result of the aforesaid incidents, and the negligence and carelessness of defendant's insured, Greater Philadelphia Health Action, Ms. Booker remained improperly and incorrectly managed and treated until it killed her.

54. By reason of, and as a result of the aforesaid incidents, and the negligence and carelessness of defendant through its agent Greater Philadelphia Health Action, Ms. Booker suffered serious, severe and permanent injuries, which included, but were not limited to loss of chances of cure and survival, fatigue, depression, loss of enjoyment of life, pain and death.

55. By reason of, and as a result of the aforesaid incidents which occurred as a result of the negligence of defendant Greater Philadelphia Health Action, Ms. Booker was forced to incur various expenses for medical care and treatment.

56. By reason of, and as a result of the aforesaid incidents which occurred as a result of the negligence of defendant through its agent Greater Philadelphia Health Action, Ms. Booker suffered great physical and mental pain, anguish, debilitation, emotional distress including depression, fatigue, loss of enjoyment of life, inconvenience, and death.

## COUNT II

### WRONGFUL DEATH

### BRANDI BOOKER v. DR. MONICA MALLORY-WHITMORE

57. Plaintiff avers and incorporates by reference all of the allegations of the preceding paragraphs herein as if fully set forth.

58. Defendant's employee Dr. Mallory-Whitmore, at all times relevant, held herself out as a qualified doctor of osteopathic medicine capable of adequately and properly treating and managing within the standard of care, a patient that had tested positive after a tuberculin / PPD test. Dr. Mallory-Whitmore acted negligently in the treatment of Ms. Booker including:

a. Failing to appropriately, correctly and properly examine, interview and evaluate Ms. Booker prior to prescribing medication and the medication isoniazid, by failing to correctly and properly treat Ms. Booker;

b. Failing to correctly and properly supervise and monitor Ms. Booker's treatment after

prescribing medication for Ms. Booker with known serious side effects; by inappropriately prescribing isoniazid for Ms. Booker.

c. Failing to timely and appropriately refer Ms. Booker to an appropriate infectious disease specialist for appropriate evaluation , care and proper treatment that would have prevented Ms. Booker's untimely death.

d. Failing to appropriately document in Ms. Booker's medical chart the prescription for isoniazid.

59. By reason of, and as a result of the aforesaid incidents, and the negligence and carelessness of defendant Dr. Mallory-Whitmore, Ms. Booker suffered serious, severe and permanent injuries, which included, but were not limited to loss of chances of cure and survival, fatigue, depression, loss of enjoyment of life, pain and death.

60. By reason of, and as a result of the aforesaid incidents which occurred as a result of the negligence of defendant Dr. Mallory-Whitmore, Ms. Booker was forced to incur various expenses for medical care and treatment.

61. By reason of, and as a result of the aforesaid incidents which occurred as a result of the negligence of the defendant Dr. Mallory-Whitmore, Ms. Booker suffered great physical and mental pain, anguish, debilitation, emotional distress including depression, fatigue, loss of enjoyment of life, inconvenience, and death.

## COUNT III
## WRONGFUL DEATH
## BRANDI BOOKER v. DR. HEATHER RUDDOCK

62. Plaintiff avers and incorporates by reference all of the allegations of the preceding paragraphs herein as if fully set forth.

63. Defendant Dr. Ruddock, at all times relevant, held herself out as a qualified physician capable of adequately and properly treating and managing within the standard of care, a patient that had tested positive after a tuberculin / PPD test. Dr. Ruddock acted negligently in the treatment of Ms. Booker including:

a. Failing to appropriately, correctly and properly examine, interview and evaluate Ms. Booker prior to requesting Dr. Mallory-Whitmore prescribe medication and the medication isoniazid , by failing to correctly and properly treat Ms. Booker;

b. Failing to correctly and properly supervise and monitor Ms. Booker's treatment after advising, counseling and instructing Ms. Booker to take medication with known serious side effects; by inappropriately requesting Dr. Mallory-Whitmore prescribe isoniazid for Ms. Booker.

    c. Failing to timely and appropriately refer Ms. Booker to an appropriate infectious disease specialist for appropriate evaluation , care and proper treatment that would have prevented Ms. Booker's untimely death.

    d. Failing to properly administer and supervise the tuberculin/PPD test given to Ms. Booker.

    e. Recklessly initiating a course of events that ultimately led to the death of Ms. Booker.

64.   By reason of, and as a result of the aforesaid incidents, and the negligence and carelessness of defendant Dr. Ruddock, Ms. Booker suffered serious, severe and permanent injuries, which included, but were not limited to loss of chances of cure and survival, fatigue, depression, loss of enjoyment of life, pain and death.

65.   By reason of, and as a result of the aforesaid incidents which occurred as a result of the negligence of defendant Dr. Ruddock, Ms. Booker was forced to incur various expenses for medical care and treatment.

66.   By reason of, and as a result of the aforesaid incidents which occurred as a result of the negligence of the defendant Dr. Ruddock, Ms. Booker suffered great physical and mental pain, anguish, debilitation, emotional distress including depression, fatigue, loss of enjoyment of life, inconvenience, and death.

67. If the defendant were a private person, it would be liable to the plaintiff in accordance with the law of the Commonwealth of Pennsylvania.

68. Wherefore plaintiff demands judgment against defendant in the sum of $886,000.00 and costs.

                                                      Respectfully Submitted,

                                                      */s/ Sharon Wilson*

                                                      Sharon Wilson, Esquire
                                                      Attorney for plaintiff
                                                      215 S. Broad Street
                                                      Philadelphia, PA 19107
                                                      August 25, 2015

## Verification

I, **Brandi Booker, Administrator of the Estate of Elaine Booker,** verify that the statements made in the foregoing petition are true and correct. I understand that false statements herein are made subject to the penalties of Pa.C.S.A. Section 4904 relating to unsworn falsification at authorities.

*Brandi Booker, Administrator*
(Signature)

Brandi Booker, Administrator
(Type/print name)



DEPARTMENT OF HEALTH & HUMAN SERVICES

Office of the General Counsel

General Law Division

330 C Street, S.W.
Switzer Building - Suite 2600
Washington, D.C. 20201

**CERTIFIED--RETURN
RECEIPT REQUESTED**

AUG 4 2015

Sharon Wilson, Esquire
Attorney at Law
215 S. Broad Street, 2nd Floor
Philadelphia, PA 19107

RE: **Administrative Tort Claim of Brandi Booker, as Administratrix of the Estate of Elaine Booker, Administrative Tort Claim No. 2015-0527**

Dear Ms. Wilson:

On May 27, 2015, on behalf of your client, Brandi Booker, as Administratrix of the Estate of Elaine Booker, you filed the above-referenced administrative tort claim under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2401(b), 2671-2680 alleging personal injuries and the wrongful death of Elaine Booker as a result of negligent medical treatment rendered to Ms. Elaine Booker by Dr. Heather Ruddock and Dr. Monica Mallory-Whitman, alleged employees of Greater Philadelphia Health Action in Philadelphia, Pennsylvania on or about April 25, 2009.

The FTCA authorizes the settlement of any claim of money damages against the United States for, inter alia, injury caused by the negligent, wrongful act or omission of any employee of the Federal government while acting within the scope of employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 2672. Pursuant to 28 U.S.C. § 2401(b), however, a tort claim against the United States must be presented in writing to the appropriate federal agency within two years after such claim accrues or be forever barred.

This letter constitutes the notice of final determination on this administrative tort claim, as required by 28 U.S.C. §§ 2401(b), 2675(a). Your client's administrative tort claim was filed on May 27, 2015 more than two years after the cause of action accrued, therefore, this administrative tort claim is deemed untimely. In addition, the evidence fails to establish that the

personal injuries and wrongful death of Elaine Booker were due to the negligent, wrongful act or omission of a federal employee as defined by 42 U.S.C. § 233(a). Accordingly, the administrative tort claim of Brandi Booker, as Administratrix of the Estate of Elaine Booker, is denied. If your client is dissatisfied with this determination, she may:

1. file a written request with the agency for reconsideration of the final determination denying the claim within six (6) months from the date of mailing of this determination (28 C.F.R. § 14.9); or

2. file suit against the United States in the appropriate federal district court within six (6) months from the date of mailing of this determination (28 U.S.C. § 2401(b)).

In the event that your client requests reconsideration, the Agency will review the claim within six (6) months from the date the request is received. If the reconsidered claim is denied, she may file suit within six (6) months from the date of mailing of the final determination of this claim.

Sincerely,

*William A. Biglow (MTB)*

William A. Biglow
Deputy Associate General Counsel
Claims and Employment Law Branch